MORDECAI AND PRINGLE, RECEIVERS, v. SEIGNIOUS.

1. TRUST—CONSTRUCTION OF WRITINGS.—Under the agreement in this case, the notes of planters for guano were held in trust for original seller. Rule of construction of writings stated.

2. PLEADINGS—DISMISSAL OF COMPLAINT—LEGAL ISSUES—EQUITABLE ISSUES.—When a complaint states a good cause of action, either at law or in equity, it should not be dismissed because legal relief is demanded.

Before WATTS, J., Charleston, December, 1897. Affirmed.

Action by T. Moultrie Mordecai and James R. Pringle *v.* James M. Seignious, on the following complaint:

*First.* That at the dates hereinafter named, the Royal Fertilizer Company was a body corporate under the laws of the State of South Carolina.

*Second.* That at the dates hereinafter mentioned the Piedmont Guano Company was a body corporate under the laws of the State of South Carolina, and that at such dates and until October 1st, 1892, James M. Seignious was a director and president of said company, having the active management and control thereof.

*Third.* That on or about the 20th day of October, 1891, the Royal Fertilizer Company entered into a contract with the Piedmont Guano Company for the sale and delivery to the said Piedmont Guano Company of 1,000 tons bulk dis-

solved bone at $10.30 per ton, payable May 1st, 1892, in cash or by the note of the said Piedmont Guano Company, with interest at seven per cent., payable November, 1892, subject to the following agreement, executed by the said Piedmont Guano Company, by its president, James M. Seignious, namely: that all of said goods, as also all of the proceeds therefrom, should be held in trust by the said Piedmont Guano Company for the payment of its obligation to the said Royal Fertilizer Company, as per the terms of said sale; that all proceeds of said goods as collected should be first applied to the payment of said obligation, whether the same should have matured or not, until they should be paid in full; that on June 1st, next after the date of such sale, or sooner, if possible, the said Piedmont Guano Company should deliver to the Royal Fertilizer Company, or its order, the notes' or other obligations of the planters or other purchasers to whom the said Piedmont Guano Company might sell said goods, for the gross amount of the sales of the same to be held by the Royal Fertilizer Company, as collateral security for the payment of said obligation to the Royal Fertilizer Company; the same to be returned to the Piedmont Guano Company in ample time for collection, in accordance with the provisions of said contract; all of which will more fully appear by a copy of the contract hereto annexed as a part of this complaint.

*Fourth.* That pursuant to the said contract and under the terms thereof the said Royal Fertilizer Company actually sold and delivered to the said Piedmont Guano Company, between January 28, 1892, and March 4, 1892, inclusive, 575 tons dissolved bone, upon the terms and conditions set forth in said agreement. That on the 2d day of May, 1892, the Piedmont Guano Company, by the said James M. Siegnious, as president, and J. S. Felder, as secretary and treasurer, pursuant to the terms of the said contract for sale of said bulk dissolved bone, executed its note to the said Royal Fertilizer Company for $6,153.84, payable November 15th, 1892, with interest at seven per cent. per annum, in payment for the said 575 tons so delivered.

*Fifth.* That thereafter, to wit: on or about the 5th day of July, 1892, the said Royal Fertilizer Company, at the request of the Piedmont Guano Company, and under the terms of the said contract, delivered to the said Piedmont Guano Company the remainder of the 1,000 tons of bulk dissolved bone mentioned in said contract, to wit: 425 tons of bulk dissolved bone, and the said Royal Fertilizer Company, on its part, fully performed all of the terms and conditions of the said contract of sale of the 20th October, 1891, by it to be done and performed.

*Sixth.* That the said Piedmont Guano Company failed to perform the terms of the said contract, and failed, on or before the 1st day of June, 1892, to deliver to the Royal Fertilizer Company the notes and other obligations of the planters and other purchasers to whom the said Piedmont Guano Company had sold the said goods; but, on the contrary, failed and refused to deliver the same.

*Seventh.* That as the plaintiffs are informed and believe, and on such information and belief allege, the bulk dissolved bone sold and delivered by the said Royal Fertilizer Company to the Piedmont Guano Company, as aforesaid, and received by the said Piedmont Guano Company, that is to say, 575 tons bulk dissolved bone, delivered between the 28th January, 1892, and the 4th March, 1892, was by the Piedmont Guano Company sold and delivered to planters and other purchasers. That a large portion of the same was taken and intermingled with other materials of the said Piedmont Guano Company; and when so taken and intermingled, was sold as ammoniated fertilizers to sundry purchasers, and part of the same was sold to sundry purchasers as dissolved bone not intermixed with other materials; and on information and belief these plaintiffs allege and charge that of the said 575 tons of bulk dissolved bone aforesaid, 300 tons were intermingled with other material of the Piedmont Guano Company, and after such intermingling was sold to planters and other purchasers as ammoniated fertilizer; and 275 tons thereof was sold as dissolved

7—53

bone but not intermixed.    And for all of the said dissolved bone both mixed and unmixed so sold, notes and other obligations of the purchasers were given to the said Piedmont Guano Company.    That the 425 tons of bulk dissolved bone delivered after March 4th, 1892, was not sold by the Piedmont Guano Company, and form no part of the consideration of the notes and obligations hereinafter mentioned.

*Eighth.* That no part of the notes or obligations received by said Piedmont Guano Company from purchasers of the said 575 tons of dissolved bone, sold to said Piedmont Guano Company subject to said agreement, has ever been delivered to the said Royal Fertilizer Company or to the plaintiffs, although frequently demanded, nor has any part of the cash proceeds of the said notes, or other obligations given therefor, ever been paid to the Royal Fertilizer Company or these plaintiffs.

*Ninth.* That among the parties to whom was sold the said bulk dissolved bone (so sold and delivered by the said Royal Fertilizer Company to the Piedmont Guano Company) were the following parties, to whom the same were sold intermingled with other material as ammoniated fertilizer, to wit: the parties named and enumerated, with the number of tons sold and the price thereof stated in the list hereto annexed as exhibit B, and that among the parties to whom the same were sold were the following parties, to whom the same were sold as dissolved bone not intermingled with other materials, to wit: the parties named and enumerated, with the number of tons sold and the prices thereof stated in the list hereto annexed as exhibit "C."

*Tenth.* That, as plaintiff is informed and believes, on May 21st, 1892, the Piedmont Guano Company, being then indebted for amounts theretofore loaned it by the firm of James M. Seignious & Son, executed by the said James M. Seignious as president, and J. S. Felder as secretary aad treasurer, and delivered to the said James M. Seignious, on behalf of James M. Seignious & Son (which firm was composed of the defendant, James M. Seignious, and his son,

Frank P. Seignious, at that time doing business under the firm name of James M. Seignious & Son), its note, dated on the said date, for $15,162.99, payable on demand; and as collateral security for said note the said James M. Seignious, acting as president of the said Piedmont Guano Company, assigned and delivered to the said James M. Seignious, acting for James M. Seignious & Son, a large portion of the bills receivable of the said Piedmont Guano Company, given by its customers for goods sold and delivered to them, including therein the notes given by the purchasers for the said bulk dissolved bone hereinbefore specifically enumerated and set forth; and that on sundry other occasions the said Piedmont Guano Company, through its president, the defendant, James M. Seignious, delivered to the said James M. Seignious, on behalf of said James M. Seignious & Son, other notes representing the notes given for the proceeds of the sale of the bulk dissolved bone so furnished by the Royal Fertilizer Company, and delivered to the Piedmont Guano Company under its contract aforesaid.

*Eleventh.* That on 18th November, 1892, the said note of the Piedmont Guano Company to the Royal Fertilizer Company was protested for non-payment.

*Twelfth.* That on the 17th day of January, 1893, the Piedmont Guano Company made an assignment for the benefit of its creditors, the provisions of which assignment were not accepted by the Royal Fertilizer Company; that the creditors who accepted such assignment having been paid in full, there was paid out of the assets remaining in the hands of the assignee and agent of creditors of the Piedmont Guano Company upon the note of the Royal Fertilizer Company the sum of $951.65, leaving a balance due upon said note of $5,202.19; that thereafter there was collected by suits against the stockholders of the Piedmont Guano Company to enforce their statutory liability $200, paid as follows: $125 paid on the 24th March, 1894; $25 paid on the 13th December, 1894; $50 paid on the 6th February, 1895—all of which were credited upon said note

of the Royal Fertilizer Company; that no part of the said note has been paid, except the sums above specified.

*Thirteenth.* That the said firm of James M. Seignious & Son was dissolved on the 6th December, 1892, by the death of Frank ·P. Seignious, and the said James M. Seignious, as surviving copartner of said firm, became possessed of all the assets of said firm, including all of the notes and other obligations, or the proceeds thereof, given by the purchasers from the said Piedmont Guano Company of the dissolved bone sold by the said Royal Fertilizer Company to the said Piedmont Guano Company, subject to the agreement hereinbefore specified.

*Fourteenth.* That the plaintiffs are informed and believe, and on such information and belief allege, that the defendant has collected upon the notes and obligations given by the purchasers from the said Piedmont Guano Company for goods sold by the said Royal Fertilizer Company, subject to the agreement as hereinbefore alleged, and by the said Piedmont Guano Company sold to the said purchasers, which said notes and obligations were given as collateral security by the said James M. Seignious, acting as president of the Piedmont Guano Company, to himself, on behalf of James M. Seignious & Son, an amount equal to the sum of about $6,000.

*Fifteenth.* That the said James M. Seignious, defendant herein, was well aware of the terms and conditions of the agreement upon which said goods were sold by the said Royal Fertilizer Company to the said Piedmont Guano Company,· and was well aware of the other matters and facts of the said agreement as herein set forth and alleged, and was well aware when he, as president of the said Piedmont Guano Company, delivered to himself, on behalf of James M. Seignious & Son, the notes and obligations aforesaid; that the said notes and obligations had been given by the purchasers of the said goods for and in consideration of the goods, to wit: the bulk dissolved bone so purchased from the Royal Fertilizer Company; and that when the

said James M. Seignious collected the notes and obligations and applied the proceeds to the payment of the debt due by the Piedmont Guano Company to the said firm of James M. Seignious & Son, the said James M. Seignious, for the said James M. Seignious & Son, then and there paid to and received himself the funds, being the proceeds of the property which he well knew to be the property of or bound for the payment of the note to the Royal Fertilizer Company; and the said James M. Seignious and James M. Seignious & Son then and there had and received all of the said proceeds for the use and benefit of the said Royal Fertilizer Company, and indebted to them therefor in the sum of $6,000, payment whereof has been demanded of him and by him refused.

*Sixteenth.* That on the 12th day of June, 1894, in the cause entitled William Crafts *v.* the Royal Fertilizer Company, pending in this honorable Court, the plaintiffs, T. M. Mordecai and J. R. Pringle, were duly appointed receivers of the assets of the Royal Fertilizer Company, with all the powers and duties appertaining to the office of receiver in such cases.

Wherefore, plaintiffs pray judgment against James M. Seignious, surviving partner of the firm of James M. Seignious & Son, in the sum of $6,000 and costs.

To this complaint the defendant demurred, and from an order overruling the demurrer he appeals.

*Mr. W. St. Julien Jervey*, for appellant, cites: *Construction of contract:* 14 S. C., 165. *This contract is not a pledge:* 96 U. S., 469; Rice, 171; 1 Strob., 103; 12 Rich., 525; 35 S. C., 187.

*Messrs. Lord & Burke*, also for appellant, cite: *What is effect of covenant to deliver property in pledge:* 96 U. S., 467; 72 Ind., 395; 33 Conn., 476; 54 N. Y., 18. *Royal Company acquired no property in notes, and cannot maintain this action:* 15 S. C., 553. *Seignious could not be*

*affected by the contract, because it was broken when he took the collateral:* 115 U. S., 188; 48 S. C., 298; 16 S. C., 192; 22 How., 28; 60 U. S., 239.

*Messrs. Mitchell & Smith* and *Trenholm, Rhett & Miller,* contra, cite: *Construction of the contract:* 4 DeGex. F. & J., 409; 104 U. S., 54. *Although an action at law, it is always to enforce an equitable doctrine:* 21 Pick., 6; 12 Rich., 518; 1 Strob., 103; 35 S. C., 187; 17 Mass., 575.

July 30, 1898. The opinion of the Court was delivered by

MR. JUSTICE GARY. The appeal herein is from an order overruling a demurrer to the complaint, which (omitting the exhibits) will be set out in the report of the case.

The questions raised by the exceptions involve a construction of the following contract: "Exhibit 'A.'—Royal Fertilizer Company of Charleston, S. C., A. J. Salinas & Son, general agents. Office, Nos. 2 and 4 Exchange street; factory, Ashley River. Charleston, S. C., Oct. 20th, 1891. Messrs. Piedmont Guano Co., Charleston, S. C.—Dear Sir: We hereby offer to sell you for account of the Royal Fertilizer Company of Charleston, S. C., the following fertilizers, on the terms and at the prices hereinafter named, subject to the approval of the general agents at Charleston, S. C.:

tons soluble guano, $     May 1st, 189 $     Nov. 1st, 189
tons am. dis. bone, $     May 1st, 189 $     Nov. 1st, 189
tons acid phosphate, $     May 1st, 189 $     Nov. 1st, 189
1,000 tons bulk dissolved bone, $10.30, May 1st, 1892, $ int. at 7 per cent. to Nov. 1st, 1892. tons ash element, $ May 1st, 189 $ Nov. 1st, 189     tons bone ash, $ May 1st, 189 $ Nov. 1st, 189 tons kainit, $ May 1st, 189 $ Nov. 1st, 189 . For all credit purchases, notes to be given payable at Charleston, S. C., without any expense whatever, of remittance to them; the purchasers have privilege of having goods sacked, they furnishing sacks and tags, expense of sacking to be borne by sellers. All of said goods, as also all proceeds therefrom, are to be held in trust

by you for the payment of your obligations to the company
as per above offer; all proceeds of said goods, as collected,
must be first applied to the payment of said obligations,
whether the same shall have matured or not, until they are
paid in full; and further, any goods shipped you in excess
of above amount, you hereby agree to receive subject to all
the conditions of this contract, unless otherwise agreed
upon.   On June 1st next, or sooner if possible, you agree
to deliver to the company, or their order, notes or other ob-
ligations of the planters or other purchasers to whom you
may sell these goods, for the gross amount of the sales of
the same, to be held by them as collateral security for the
payment of your obligations above mentioned.   The same
will be returned to you in ample time for collection, in ac-
cordance with the provisions hereinbefore stated.   All car
load lots will be delivered f. o. b. cars at company's works,
on Ashley River; less than car load lots will incur a charge
of $1 per ton cartage.   All the productions of the company
are sold at the rate of 2,000 pounds to the ton, and unless
otherwise stated bags of 200 pounds each, with inspection
fee paid, and are to be delivered by seller and received by
purchaser on or before 1st May next.   This sale cannot be
transferred or assigned without the consent of the general
agents.   In case of the destruction of their works, or any
part of the same, by fire or other cause, the right is reserved
by the company to cancel the whole or any part of this sale.
The company also reserves the right of canceling the whole
or any part of the above contract in case of your failure to
meet any indebtedness that may be due them by you, or in
case of any occurrence that they may regard as unfavorable
to your credit.   Goods guaranteed 13 per cent. available
phos. acid.            traveling agent.   Accepted in duplicate.
Jas. M. Seignious, Pt. Piedmont Guano Co.            189
Approved October 20th, 1891.   A. J. Salinas & Son, gen-
eral agents."

Appellant's attorneys, in their argument, admit that the
grounds of demurrer and the exceptions, although differing

in phraseology, raise the same issues.   The first ground of demurrer to the complaint is as follows: "I.  Because the true construction of the contract alleged in the complaint between the Royal Fertilizer Company and the Piedmont Guano Company, with regard to the notes to be taken by the latter for the sale by it of goods purchased from the Royal Fertilizer Company, is that there was no trust impressed upon these notes upon their execution, but that there was a covenant that they should be delivered by way of collateral security to the Royal Fertilizer Company.   There is no allegation in the complaint that they were so delivered, but, on the contrary, it is alleged that the Piedmont Company refused to deliver the notes, or to pay over any part of the cash proceeds of the notes to the Royal Fertilizer Company.   That company, therefore, had no lien on or property in the notes, and the plaintiffs have no right to follow the notes or the proceeds thereof into the hands of the defendant, Seignious."   The appellant contends that the words, "all proceeds therefrom," do not include the notes that were taken by the Piedmont Guano Company upon the sale of said goods, but that said words refer to money arising from cash sales thereof.   The words, "in accordance with the provisions hereinbefore stated," show that the notes that were taken by the Piedmont Guano Company, upon the sale of the goods, became subject to provisions which had been previously stated in the contract.   When we turn to the provisions thereinbefore mentioned, we find them to be as follows: "All proceeds therefrom are to be held in trust by you for the payment of your obligations to the company;" and 2.  "All proceeds of said goods, as collected, must be first applied to the payment of said obligations, whether the same have matured or not, until they are paid in full."   There are no other provisions to which it can reasonably be said that the words, "in accordance with the provisions hereinbefore stated," had reference.   The word "all" precedes and qualifies the word "proceeds," and is used in both the first and second

of the provisions just quoted, which, also, tends to show that the word "proceeds" is comprehensive enough to include the notes. In the interpretation of an instrument of writing, that construction is preferred which will give effect to all its provisions, rather than that which will render any of them ineffectual. The foregoing construction gives effect to all the provisions of the contract, while that for which the appellant contends would render of no force and effect the words, "in accordance with the provisions hereinbefore stated." It is manifest that one of the objects of the contract was to secure the payment of the indebtedness of the Piedmont Guano Company to the Royal Fertilizer Company. The construction for which the appellant contends is, also, antagonistic to this intention, in that it would place it in the hands of the Piedmont Guano Company, by selling the goods on credit and taking notes therefor, to deprive the Royal Fertilizer Company of all security for its indebtedness. The object in requiring the Piedmont Guano Company to deliver to the Royal Fertilizer Company the notes of the planters to whom it sold the goods, was not to enable the Piedmont Guano Company to pledge the notes as collateral security but for the safe keeping of said notes, to avoid just such a complication as has arisen in this case, by taking it out of the power of Piedmont Guano Company to transfer said notes to other parties. But even if the first of the provisions hereinbefore mentioned is not applicable to the notes, it, nevertheless, would be the case that the money arising from the collection of the notes would have to be applied, first, to the extinguishment of the Piedmont Guano Company's indebtedness to the Royal Fertilizer Company, and this would be sufficient to create a trust. Under this view, the Piedmont Guano Company would be regarded as holding said notes under an agreement that the money arising from the collection thereof should be paid first in satisfaction of said indebtedness. In such a case, the legal title would be in the Piedmont Guano Company, while the beneficial interest would be in the Royal Fertil-

izer Company, which is one of the most common instances of a trust. These views show that the Circuit Judge was not in error in overruling the first ground of the demurrer.

The second ground of demurrer is as follows: "II. Because, if the above is not the correct construction, but the true construction is, that the notes were impressed with a trust in favor of the Royal Fertilizer Company by virtue of said agreement, yet the legal estate in the notes, upon the facts stated in the complaint, was not in the Royal Fertilizer Company, and any equity it might or may have in the same, or in the proceeds thereof, can only be set up in equity, and not in a case at common law, as for money had and received." The facts are set forth in the complaint out of which the trust arose, and there are allegations to the effect that the defendant, with full knowledge of the trust, participated in a breach thereof, by collecting certain of said notes and refusing to pay over the sums collected by him. A good cause of action is stated against him, and whether the issues arising in this case are to be tried on the law or chancery side of the Court, the defendant is not entitled to have the complaint dismissed. *Latham* v. *Harby*, 50 S. C., 428. There was also no error on the part of the Circuit Judge in overruling the second ground of the demurrer.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.